United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 30, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————

No. 03-10767

————————————————

DAVID MONTEZ, Etc; ET AL

                              Plaintiffs

RITA WHITT, individually and next friend of Kimberly Whitt,
deceased; RONNIE WHITT, individually and next friend of Kimberly
Whitt, deceased

                    Plaintiffs-Appellants

v.

DEPARTMENT OF THE NAVY

                         Defendant-Appellee

--------------------
Appeal from the United States District Court
for the Northern District of Texas, Dallas
--------------------

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

BENAVIDES, Circuit Judge:

     Plaintiffs-Appellants, Rita and Ronnie Whitt (the "Whitts"),
appeal the district court's dismissal of their Federal Tort Claims
Act ("FTCA") complaint against the Department of the Navy (the
"Navy") for lack of subject matter jurisdiction.[1]  In this case,
the parties dispute whether tortfeasor Emilio Partida was acting

———————————

     [1] The action against the Department of the Navy originally was
brought by several other plaintiffs in addition to the Whitts.
However, no other plaintiffs elected to appeal the district court's
dismissal of the case.

within the scope of his naval employment at the time of the accident that killed Kimberly Whitt. Ordinarily the district court can resolve factual disputes in determining jurisdiction pursuant to a Rule 12(b)(1) motion for dismissal. Here, however, there is a dispute with respect to a fact that is determinative of both the federal jurisdiction question and the underlying federal cause of action. Because the federal cause of action and federal jurisdiction are interdependent, the district court erred in dismissing the case under Federal Rule of Civil Procedure 12(b)(1) when it resolved the disputed factual issue in favor of the Navy. Accordingly, we reverse and remand.

## I. Background

The Whitts sued the Navy for damages arising from the death of their daughter Kimberly. At the time of her death, Kimberly was seventeen years old. She died on December 31, 2000, as a result of an auto accident in which she was a passenger. The vehicle in which Kimberly was riding flipped over while negotiating a curve in the road, and Kimberly was thrown from the vehicle and killed by the impact.

The vehicle was driven by Emilio Partida, a twenty-year old enlisted man in the Navy. The car that Partida drove was owned by the Navy. Although the car was entrusted by the Navy to Petty Officer Gene Martin, Martin loaned the vehicle to Partida so Partida could visit his parents in Merton, Texas, over the New

Years weekend.

However, instead of driving to Merton by himself, Partida decided to take several civilians along with him. Partida was invited to attend a wedding in Merton that evening, and Partida and the civilians wanted to participate in the festivities. Partida picked up five civilian passengers -- including Kimberly Whitt -- in the Navy vehicle, purchased three cases of beer, and proceeded to the wedding. On the way to Merton, Partida drove too fast, flipping the vehicle and killing Kimberly Whitt and another passenger, and injuring three others. Both the Whitts and the Navy agree that Partida was negligent and that his negligence caused the accident.

The Whitts sued the Navy under the Federal Tort Claims Act, contending that Partida caused Kimberly's death in the line of duty as a Navy enlisted man and that, therefore, the Navy was liable for her death. The district court dismissed the Whitts' complaint against the Navy under Rule 12(b)(1) for lack of subject matter jurisdiction.[2] The court held that the FTCA did not apply to the complaint against the Navy because of the court's finding that Partida was not "acting within the scope of his office or employment" as a member of the United States Navy at the time of the accident. The Whitts argue that the district court erroneously

---

[2] We note that our examination of the record reveals that the Whitts objected to the district court that the determination of the merits should not have been made on the basis of a 12(b)(1) motion.

applied a 12(b)(1) standard to resolve the jurisdictional issue on the basis of facts dispositive of the merits as well as jurisdiction, and that instead the court should have applied a 12(b)(6) or summary judgment standard.

## II. Standard of Review

This Court reviews *de novo* the legal issue of whether the district court has discretion to resolve disputed facts dispositive of subject matter jurisdiction, applying the same standard used by the district court. *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

## III. Discussion

In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. See *Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947). "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson*, 117 F.3d at 904. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case.

4

However, where issues of fact are central both to subject matter jurisdiction and the claim on the merits, we have held that the trial court must assume jurisdiction and proceed to the merits. In circumstances where "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case" under either Rule 12(b)(6) or Rule 56. *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981); see also *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir. 1985).

As we stated in *Williamson*,

> [N]o purpose is served by indirectly arguing the merits in the context of federal jurisdiction. Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place greater restrictions on the district court's discretion.

645 F.2d at 415. Therefore, we follow our general rule in holding that a jurisdictional attack intertwined with the merits of an FTCA claim should be treated like any other intertwined attack, thereby making resolution of the jurisdictional issue on a 12(b)(1) motion improper.

The government relies on our decision in *Moran v. Kingdom of*

5

*Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994), in which we allowed judges to make factual determinations on a 12(b)(1) motion in regard to claims arising under the Foreign Sovereign Immunities Act ("FSIA"). While *Moran* carved out a limited exception to the general rule requiring the application of a 12(b)(6) or summary judgment standard to resolve issues dispositive of both subject matter jurisdiction and the merits, we took pains to explain why that exception applies only to cases brought under the FSIA, inasmuch as FSIA claims involve immunity from suit. "[B]ecause sovereign immunity under the FSIA is immunity from suit, not just from liability, 'postponing the determination of subject matter jurisdiction until some point during or after trial would be inappropriate.'" *Moran*, 27 F.3d at 172 (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988)).

An exception to the general rule for FSIA cases is justified by the fact that we have held that the FSIA requires courts to fashion procedures that lead to pretrial resolution of a foreign state's immunity from suit -- even if such procedures depart from the "usual" rule. See *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General*, 923 F.2d 380, 385 (5th Cir. 1991) (holding that the denial of a motion to dismiss for lack of subject matter jurisdiction is immediately appealable in cases brought under the FSIA); *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992) (holding that the "usual procedure" for

6

resolving contested jurisdictional issues did not apply in FSIA cases, and that district courts must utilize circumscribed discovery procedures to resolve jurisdictional motions prior to trial in order to preserve a foreign sovereign's immunity from the burdens of litigation). The need for special procedures designed to preserve a foreign sovereign's immunity from suit is heightened in FSIA cases, which implicate notions of international comity, a concern that does not exist in FTCA cases against the United States. See *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626 (1983) (emphasizing "[d]ue respect for . . . principles of comity between nations" in asserting jurisdiction under the FSIA); *Arriba*, 962 F.2d at 537 (recognizing that principles of comity favor the exercise of restraint in asserting jurisdiction over foreign states under the FSIA).

Moreover, information provided to us by our sister Circuits indicates that *Moran* is best viewed as a limited exception to the general rule. Two Courts of Appeals have held that an FTCA claim cannot be dismissed for lack of subject matter jurisdiction where the disputed jurisdictional facts concerning immunity are inextricably intertwined with the merits of the plaintiff's claim. Citing our decision in *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981), as the controlling precedent on the issue, the Eleventh Circuit specifically has held in the context of the FTCA that a

7

claim against the United States may not be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) based upon the district court's resolution of the disputed factual question whether an employee of the U.S. government was acting within the scope of his employment. See *Green v. Hill*, 954 F.2d 694, 698 (11th Cir. 1992); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). The Ninth Circuit also has held that an FTCA claim cannot be dismissed for lack of jurisdiction under Rule 12(b)(1) where resolution of the jurisdictional issue is dependent upon the resolution of factual issues going to the merits. See *Augustine v. United States*, 704 F.2d 1074, 1079 (9th Cir. 1983) ("Because the jurisdictional issue [when plaintiff's cause of action accrued for purposes of the FTCA] is dependent upon the resolution of factual issues going to the merits, it was incumbent upon the district court to apply summary judgment standards in deciding whether to grant or deny the government's motion."). Therefore, because the Whitts' claim is based on the FTCA, and not the FSIA, *Moran* does not apply and the trial court must apply a 12(b)(6) or summary judgment standard to resolve issues dispositive of both subject matter jurisdiction and the merits.[3]

---

[3] It may well be that the district court can determine whether Partida was acting within the course and scope of his naval employment on a Rule 56 motion for summary judgment. However, it is clear that this is not the basis of the district court's determination, nor did the court convert the 12(b)(1) motion into a motion for summary judgment.

## IV. Conclusion

According to case law in this Circuit, and consistent with the decisions of our sister Circuits, the district court should not have resolved disputed facts dispositive of both subject matter jurisdiction and the merits of an FTCA claim on a 12(b)(1) motion. Accordingly, for the foregoing reasons, the opinion of the district court is REVERSED and the case REMANDED for further proceedings consistent with this Court's opinion.