Reed O'Connor, UNITED STATES DISTRICT JUDGE
BNSF Railway Company brought this suit against the Equal Employment Opportunity Commission (EEOC) seeking declaratory and injunctive relief for what BNSF characterizes as manifestly illegal agency action.[1] In response, the EEOC moved to dismiss the case in its entirety.[2] The EEOC argues BNSF establishes no basis for subject-matter jurisdiction over its claims.[3]
For the reasons explained below, the motion is DENIED .
I. BACKGROUND
A. Undisputed Facts
The EEOC is a federal agency created by Congress to administer the nation's employment-nondiscrimination laws. The EEOC enforces these laws according to the scheme established by Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e, et seq. As relevant to this dispute, the EEOC typically investigates alleged violations of a nondiscrimination law after receiving a charge of discrimination filed by an aggrieved employee, a job applicant, or a Commissioner of the EEOC. See 42 U.S.C. § 2000e-5. The latter method is known as a Commissioner's charge.
When it completes an investigation, the EEOC makes a "reasonable cause" determination-an official determination on whether there is reasonable cause to believe an employer has violated a nondiscrimination law. Id. If the EEOC finds reasonable cause, it may sue the employer or issue a right-to-sue notice to inform an aggrieved person that he or she has the right to file his or her own suit within a specified time. Importantly, private parties are generally precluded from suing an employer during the early stages of an EEOC investigation. See generally id. This guides employment-discrimination issues through an administrative process with the hope of *517 encouraging steady oversight and conciliation rather than rampant litigation.
In 2012, BNSF received notice of a Commissioner's charge indicating the EEOC would begin investigating BNSF for purported violations of the ADA and the Genetic Information Nondiscrimination Act (GINA).[4] See Compl. ¶ 8b, ECF No. 1. Over the next several years, BNSF and the EEOC communicated regularly about the investigation and BNSF produced various documents and information. Id. at 9-11. BNSF dealt frequently with the EEOC's Denver field office. Though BNSF worked with the EEOC on several requests, it also challenged some and declined others. Id. at 10.
On March 29, 2018, the EEOC issued right-to-sue letters to 54 individuals. The letters reported that the EEOC found reasonable cause to believe BNSF violated the ADA, that the EEOC was not planning to sue BNSF, and that the recipients of the letters had the right to file their own lawsuits within 90 days. Def.'s Br. Supp. Mot. Dismiss 2, ECF No. 10 [hereinafter "Mot. Dismiss"]. On April 24, 2018, BNSF filed this suit against the EEOC. Compl., ECF No. 1.
B. BNSF's Allegations
BNSF first takes issue with the Commissioner's charge on which the EEOC's initial investigation was based. It alleges, among other things, that the charge:
• failed to identify "any period of time during which the ADA discrimination and GINA violations allegedly occurred, making it defective as a charge under EEOC's own regulations, see 29 C.F.R. § 1601.12(a)(3), and the Supreme Court's decision in EEOC v. Shell Oil Co. , 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984)";
• did "not state any facts and instead parrot[ed] the language of the statute ... another defect making the charge invalid under both EEOC's regulations and Shell Oil ";
• was "not made under 'oath or affirmation' as required by a provision of Title VII adopted in the ADA. 42 U.S.C. § 2000e-5(b) ; see also 29 C.F.R. §§ 1601.9, 1601.11(a)"; and
• "was not even filed by a member of the Commission" because it was signed by "Stuart J. Ishimaru dated April 25, 2012" and "[i]t is not clear that Mr. Ishimaru was still an EEOC Commissioner on that date, because on April 11, 2012, EEOC announced his resignation from the Commission 'this month' and a news release on April 30 announced his acceptance of a new position with the Consumer Financial Protection Bureau."
Id. at 7-8. BNSF's Complaint continues that, "whatever [Commissioner Ishimaru's] status on April 25, an EEOC regulation provides that a Commissioner's charge is 'deemed filed upon receipt by the Commission office responsible for investigating the charge' " and the "EEOC confirmed to BNSF that the purported Ishimaru Commissioner's charge was received by the Denver Field Office on May 11." Id. at ¶ 8e.
BNSF also alleges the Commissioner's charge ultimately resulted in issuance of the 54 right-to-sue letters. Specifically, BNSF claims the letters were sent "based on the purported Ishimaru Commissioner's Charge to 54 persons whose names BNSF had supplied to the Commission in reliance on EEOC's assurances, in writing and by *518 telephone, that the information was not being requested in connection with that ostensible charge." Id. at ¶ 13. BNSF further alleges that, because the EEOC received the names of the 54 right-to-sue recipients from BNSF in document requests purportedly unrelated to the original Commissioner's charge, and because those individuals were not privy to that investigation, "each of the 54 recipients ... is a member of the 'public' to whom information about a charge or information gathered in connection with a charge cannot be lawfully disclosed by EEOC." Id. at ¶ 17.
BNSF requests a judgment declaring the Commissioner's charge void, a judgment declaring the right-to-sue letters void, a judgment requiring the EEOC to withdraw the letters and advise recipients of such withdrawal, and a judgment enjoining any lawsuit based on the right-to-sue letters. Id. at 13-14. The EEOC moves to dismiss BNSF's claims under Rules 12(b)(1) and (6). Mot. Dismiss, ECF No. 10.
II. LEGAL STANDARD
The EEOC primarily moves to dismiss under Federal Rule of Civil Procedure 12(b)(1). It argues BNSF fails to identify an agency action subject to judicial review and therefore lacks a hook for invoking jurisdiction under 28 U.S.C. § 1331. The EEOC further contends BNSF fails to establish a basis for jurisdiction under any of the remaining statutes cited in the Complaint. Specifically, it urges that those statutes plainly do not confer jurisdiction and that, in any event, BNSF fails under Rule 12(b)(6) to sufficiently state a claim to justify their application here.[5]
A. Rule 12(b)(1) -Motion to Dismiss for Lack of Subject-Matter Jurisdiction
Federal district courts exercise limited subject-matter jurisdiction. Where such a court lacks a specific basis for subject-matter jurisdiction over a claim, it has no power to hear it. Accordingly, Rule 12(b)(1) allows a defendant to move for the dismissal of claims based on "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1).
"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison , 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting Nowak v. Ironworkers Local 6 Pension Fund , 81 F.3d 1182, 1187 (2d Cir. 1996) ). "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Montez v. Dep't of Navy , 392 F.3d 147, 149 (5th Cir. 2004) (quoting Robinson v. TCI/US W. Commc'ns Inc. , 117 F.3d 900, 904 (5th Cir. 1997) ). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."
*519 Ramming v. United States , 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).
B. Reviewability Under the APA
Here, BNSF suggests that, at a minimum, subject-matter jurisdiction exists over the case through a combination of 28 U.S.C. § 1331 and section 10(a) of the Administrative Procedure Act (APA), codified at 5 U.S.C. § 702.[6] Compl. ¶ 1, ECF No. 1. Section 1331 provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1331 therefore provides only for jurisdiction-it does not supply a cause of action or waive sovereign immunity. The APA does both. See Stockman v. FEC , 138 F.3d 144, 151 n.13 (5th Cir. 1998).
Section 10(a) of the APA provides, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The Supreme Court has noted two distinct requirements in this statutory language. "First, the person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion." Lujan v. Nat'l Wildlife Fed'n , 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). "Second, the party seeking review under § 702 must show that he has 'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.' " Id. at 883, 110 S.Ct. 3177.
Where "review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.' "[7] Id. at 882, 110 S.Ct. 3177 (citing 5 U.S.C. § 704 ). To be "final," an agency action must "mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." U.S. Army Corps of Engrs v. Hawkes Co. , --- U.S. ----, 136 S. Ct. 1807, 1814, 195 L.Ed.2d 77 (2016). And "[e]ven if final, an agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court." Id. at 1815, 136 S.Ct. 1807, 195 L.Ed.2d 77.
*520 III. APPLICATION
BNSF alleges the EEOC's issuance of 54 right-to-sue letters constituted final agency action. While BNSF also suggests the Commissioner's charge was illegal, BNSF's Complaint identifies only the right-to-sue letters as "final agency action" over which the Court has jurisdiction. See Compl. ¶ 15, ECF No. 1 ("The March 29 letters and Notices of Right to Sue from EEOC were 'final agency action' as defined in 5 U.S.C. § 704."). Moreover, the Complaint alleges BNSF was "adversely affected and aggrieved by EEOC's action because persons who are members of the public ... were informed by EEOC"-i.e., they received the right-to-sue letters-of the Commissioner's charge, the EEOC's investigation, and an alleged right to sue. Id. at ¶ 18.
Despite BNSF's suggestion in the motion papers that the Commissioner's charge was final agency action, see, e.g. , Pl.'s Resp. Mot. Dismiss 6, ECF No. 12 [hereinafter "Pl.'s Resp."], the Court addresses the only action BNSF characterized as final in the pleadings: issuance of the right-to-sue letters.
A. Final Agency Action
1. Consummation of Decisionmaking
The EEOC concedes issuance of right-to-sue letters "arguably satisfies the first condition for finality." Mot. Dismiss 8, ECF No. 10. Its only argument to the contrary is that the letters state "the EEOC has only decided not to sue 'at this time' and that the notice 'does not mean that the EEOC ... will not sue [BNSF] later or intervene later in your lawsuit if you decide to sue on your own behalf.' " Id. at 8 n.6, ECF No. 10. To the extent the EEOC argues the letters do not mark the consummation of the agency's decisionmaking process because it may later decide to become legally involved, that argument fails.
As BNSF points out, the Supreme Court has held that an agency's ability to revisit and revise a decision "is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal." Hawkes , 136 S. Ct. at 1814 ; see also Sackett v. EPA , 566 U.S. 120, 127, 132 S.Ct. 1367, 182 L.Ed.2d 367 (2012) (holding a compliance order linked to potential penalties is final even though the agency contemplated ongoing "informal discussion" and possible reconsideration of its findings). And the right-to-sue letters represent an "otherwise definitive decision." When the EEOC issues a right-to-sue letter, the agency "for all practical purposes 'has ruled definitively' that" the recipient is entitled to sue. Hawkes , 136 S. Ct. at 1814 (citation omitted).
The Court finds the letters satisfy the first condition of finality.
2. Rights and Obligations
The parties contest whether the right-to-sue letters satisfy the second traditional condition of finality. This condition asks whether issuance of the letters was an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' " Bennett v. Spear , 520 U.S. 154, 178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic , 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970) ).
The EEOC argues that issuance of the letters does not constitute final agency action because it does not "fix obligations or legal relationships." Mot. Dismiss 8, ECF No. 10 (quoting Lone Star Coll. Sys. v. EEOC , No. H-14-529, 2015 WL 1120272, at *4 (S.D. Tex. Mar. 12, 2015) ). In support of its argument, the EEOC cites a Fourth Circuit case holding that a "reasonable *521 cause determination" is not final agency action and a D.C. Circuit case holding that a "Letter of Determination"-memorializing the EEOC's opinion on a particular policy-is not final agency action. Mot. Dismiss 8-10, ECF No. 10; see also Georator Corp. v. EEOC , 592 F.2d 765 (4th Cir. 1979) ; AT & T Co. v. EEOC , 270 F.3d 973 (D.C. Cir. 2001).
BNSF first responds that it is not challenging the EEOC's underlying "reasonable cause determination," rendering the pre-enforcement cases relied on by the EEOC inapposite. Pl.'s Resp. 2, ECF No. 12; id. at 11 ("BNSF has never said it is suing to challenge the agency's reasonable-cause determination."). "[U]nlike those situations, [this] lawsuit does not seek pre-enforcement review of a substantive EEOC decision about BNSF." Id. at 2. Instead, "the company seeks judicial review of whether EEOC has complied with legal limitations Congress placed on the agency as law enforcer." Id. at 11. BNSF focuses on whether the right-to-sue letters were issued illegally after an investigation based on an allegedly illegal Commissioner's charge. Id. at 4-5.
BNSF then offers two theories for why issuance of the letters constituted final agency action with the requisite legal consequences. First, BNSF contends the letters fixed legal rights "in a very straightforward manner"-they explicitly "purport[ ] to grant others the 'right ' to sue BNSF, a 'right ' BNSF contends EEOC granted in derogation of EEOC's statutory responsibilities." Id. at 14 (emphasis added). Second, BNSF proffers a more general argument that issuance of the letters had the "legal consequence" of violating BNSF's procedural protections under Title VII. Id. at 14-15.
The Court finds that the question is not a close one under BNSF's first theory. Issuing right-to-sue letters, as the name suggests, is an action "by which rights or obligations [are] determined, or from which legal consequences ... flow." Hawkes , 136 S. Ct. at 1814. Title VII erects an intricate infrastructure for the enforcement of nondiscrimination policies that balances regulatory oversight with the right of individuals to pursue their own discrimination claims, all while protecting employers from frivolous prosecution. As part of this delicate scheme, Title VII establishes when and to whom the EEOC must issue right-to-sue letters and mandates that recipients not file suit more than "ninety days after the giving of such notice." 42 U.S.C. § 2000e-5(f)(1).
In other words, "an employee must obtain a right-to-sue letter before bringing suit." Mach Mining, LLC v. EEOC , --- U.S. ----, 135 S. Ct. 1645, 1651, 191 L.Ed.2d 607 (2015). And an employee receiving such a letter must sue quickly or be legally barred from doing so. See 42 U.S.C. § 2000e-5(f)(1). Right-to-sue letters therefore determine a recipient's "right" to sue and have the "legal consequence" of concluding the EEOC's monopoly on a given enforcement matter.[8] On *522 this theory alone, the Court finds the EEOC's issuance of right-to-sue letters satisfies the second traditional condition of finality.
It is worth addressing, however, the second theory under which BNSF suggests the right-to-sue letters caused the requisite legal consequences. According to an emerging body of law, there is reason to believe agency action contravening a statutory obligation is per se reviewable under the APA. As the Supreme Court recognized in Mach Mining , "Congress rarely intends to prevent courts from enforcing its directives to federal agencies." 135 S. Ct. at 1651. "For that reason, [the Supreme] Court applies a 'strong presumption' favoring judicial review of administrative action." Id. In APA cases, this presumption is "guided by the Supreme Court's interpretation of the APA's finality requirement as 'flexible' and 'pragmatic.' " Qureshi v. Holder , 663 F.3d 778, 781 (5th Cir. 2011) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149-50, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) ). Buoying this pragmatic framework is an increasing hesitance by the Supreme Court and lower courts alike to shelter agencies from judicial enforcement of congressional mandates.[9]
Mach Mining is not an APA case, but it is instructive.[10] There, the Supreme Court *523 concluded the EEOC's statutorily mandated, pre-enforcement conciliation efforts are subject to judicial review. Mach Mining , 135 S. Ct. at 1653. But it is not so much the Supreme Court's conclusion as it is the reasoning that matters. For one thing, Title VII nowhere provides for such review. Yet the Supreme Court recognized that "Title VII ... imposes a duty on the EEOC to attempt conciliation of a discrimination charge prior to filing a lawsuit." Id. at 1651 (emphasis added). With that duty in mind, it considered the following hypothetical: what "if, after finding reasonable cause to support a charge, the EEOC took the employer straight to court"? Id. at 1652. In such a case, the EEOC "has not satisfied Title VII's requirement." Id.
According to the worldview the EEOC puts forward here, even such a patently illegal action would be immune from APA review for lack of finality-"the Commission's compliance with the law would rest in the Commission's hands alone." Id.
The Supreme Court recognized in Mach Mining that such a worldview squares with neither the Rule of Law nor the related presumption that "Congress rarely intends to prevent courts from enforcing its directives to federal agencies." Id. at 1651. "We need not doubt the EEOC's trustworthiness, or its fidelity to law," the Supreme Court concluded. Id. at 1652. "We need only know-and know that Congress knows-that legal lapses and violations occur, and especially so when they have no consequence." Id. at 1652-53.
Mach Mining suggests neither finality nor discretion provide agencies cover for illegality. Or as the Supreme Court put it in SAS Institute , when an agency "engage[s] in shenanigans by exceeding its statutory bounds, judicial review remains available consistent with the Administrative Procedure Act, which directs courts to set aside agency action 'not in accordance with law' or 'in excess of statutory jurisdiction, authority, or limitations.' " SAS Inst., Inc. v. Iancu , --- U.S. ----, 138 S. Ct. 1348, 1359, 200 L.Ed.2d 695 (2018) (cleaned up). One wonders how a court might set aside "agency action ... not in accordance with law," 5 U.S.C. § 706(2)(A), were agency action in violation of law not final. An agency cannot skirt its obligations by acting illegally and then claiming it has not acted at all.
This case illustrates why. A regulatory agency's statutory obligation is a regulated entity's right-they are two sides of the same coin. That is what BNSF has pleaded. See, e.g. , Compl. ¶ 18, ECF No. 1 ("BNSF suffered a legal wrong and was adversely affected and aggrieved by EEOC's action because persons who are members of the public with no lawful right to know of it were informed by EEOC" of the investigation and determination); Pl.'s Resp. 15, ECF No. 12 ("EEOC's violation of the statutory restrictions on its conduct, as pleaded, were 'clearly designed to target' BNSF."). BNSF argues that, by ignoring the confidentiality requirements of Title VII, the EEOC violated important procedural protections guaranteed under the law. In this light, the EEOC's argument *524 that issuance of the right-to-sue letters is unreviewable, non-final action amounts to an argument that parties whose rights have been violated by the EEOC have no remedy against it.
That argument seems unlikely to withstand the tide of the Supreme Court's modern jurisprudence. That jurisprudence represents something more fundamental than modern: an understanding that courts "must ensure that for every right there is a remedy." United States v. Ugalde , 861 F.2d 802, 810 (5th Cir. 1988) (citing Marbury v. Madison , 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803) ). "The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." Sealed Appellant v. Sealed Appellee , 130 F.3d 695, 698 (5th Cir. 1997) (quoting Marbury , 5 U.S. at 163, 2 L.Ed. 60 ). And "[i]n the main, courts have not restrained their remedial powers on account of the wrongdoers' affiliation with the executive branch." Id. That should be no less true for the EEOC today than it was for the President of the United States in 1803.
Title VII provides, "[c]harges shall not be made public by the Commission." 42 U.S.C. § 2000e-5(b). "That language is mandatory, not precatory." Mach Mining , 135 S. Ct. at 1651. Yet BNSF alleges the EEOC violated that statutory mandate. Whether such a violation fits neatly within a rigid and formalistic conception of finality, the Court need not say. The APA's finality requirement is flexible and pragmatic enough to afford review where an agency is alleged to have done what a statute says it may not.[11]
Accordingly, the Court finds BNSF sufficiently alleged the requisite legal consequences.
B. Legal Wrong or Adversely Affected
This prong of APA reviewability requires a brief detour. The contours of Fifth Circuit and Supreme Court case law on this issue affect whether BNSF may plead a "legal wrong" or that it was "adversely affected or aggrieved within the meaning of a relevant statute," and whether BNSF's claims are ultimately subject to the zone-of-interests test.
1. The Alabama-Coushatta Framework
Because the APA does not confer jurisdiction, claims predicated on only the APA-such as here-rely on 28 U.S.C. § 1331 to confer jurisdiction. But § 1331 does not waive sovereign immunity. Beale v. Blount , 461 F.2d 1133, 1138 (5th Cir. 1972). APA-only claims therefore depend on the APA for waiver of an agency's sovereign immunity.
Several decades ago, the Fifth Circuit held that APA § 702 "waive[s] the defense of sovereign immunity for nonstatutory review under section 1331." Sheehan v. Army & Air Force Exch. Serv. , 619 F.2d 1132, 1139 (5th Cir. 1980), rev'd on other grounds , 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982). As noted, nonstatutory review involves claims predicated on a right that exists apart from the APA. Sheehan therefore held that even claims not predicated on the APA are entitled to its waiver provision. This signaled a broad reading rooted in the unqualified text of § 702's second sentence.
*525 More recently, the D.C. Circuit similarly held "that APA § 702's waiver of sovereign immunity permits not only [an] APA cause of action, but ... nonstatutory and First Amendment actions as well." Trudeau v FTC , 456 F.3d 178, 187 (D.C. Cir. 2006). It "also [held] that the waiver applies regardless of whether the [challenged conduct] constitutes 'final agency action.' " Id. Indeed, the D.C. Circuit was convinced "that Congress intended to waive immunity for 'any,' ... and 'all,' ... actions for equitable relief against an agency." Id. (citations omitted).
The Fifth Circuit recently held in Alabama-Coushatta Tribe of Tex. v. United States , however, that " § 702 ''contains two separate requirements for establishing a waiver of sovereign immunity." 757 F.3d 484, 489 (5th Cir. 2014) (citing Lujan , 497 U.S. at 882, 110 S.Ct. 3177 ). Namely, a "plaintiff must identify some 'agency action' affecting him in a specific way" and "show that he has 'suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute.' " Id. (citing Lujan , 497 U.S. at 882-82, 110 S.Ct. 3177 ); contra Trudeau , 456 F.3d at 187 (noting "the language of the waiver sentence ... does not use either the term 'final agency action' or the term 'agency action' ").
The court further held " § 702 ''also waives immunity for two distinct types of claims." Alabama-Coushatta , 757 F.3d at 489 (emphasis added). The first type is a claim brought "pursuant only to the general provisions of the APA." Id. For immunity to apply to this type of claim, the following elements must be satisfied: (1) "a 'person suffer[s] legal wrong because of agency action,' " ids="4126142" index="95" url="https://cite.case.law/f3d/757/484/#p489">id. (citing 5 U.S.C. § 702 ), and (2) "[t]here must be 'final agency action,' " id. (citing Lujan , 497 U.S. at 882, 110 S.Ct. 3177 ). In sum, immunity is waived for APA-only claims only where the plaintiff pleads a "legal wrong" and "final agency action."
The second type of claim is where "judicial review is sought pursuant to a statutory or non-statutory cause of action that arises completely apart from the general provisions of the APA." Id. (citing Sheehan , 619 F.2d at 1139 ; Trudeau , 456 F.3d at 186-87 ). Immunity applies to this type of claim "where a person is 'adversely affected or aggrieved by agency action within the meaning of a relevant statute,' " ids="3457912,3352451" index="103" url="https://cite.case.law/f3d/456/178/">id. (citing 5 U.S.C. § 702 ), and "[t]here is no requirement of 'finality' for this type of waiver to apply," itation index="105" url="https://cite.case.law/citations/?q=5%20U.S.C.%20%C2%A7%20702">id. (noting "[t]he requirement of 'finality' comes from § 704 and has been read into § 702 in cases where review is sought pursuant only to the general provisions of the APA"). To sum, immunity is waived for claims brought pursuant to a cause of action independent of the APA only where the plaintiff is "adversely affected or aggrieved by agency action within the meaning of a relevant statute"-regardless of whether that action is final. Id. (citing Lujan , 497 U.S. at 882, 110 S.Ct. 3177 ).
To the extent Alabama-Coushatta sets a framework purely for the application of § 702's immunity-waiving provision, it charts a different course than Sheehan foreshadowed and other circuits have taken. See Navajo Nation v. Dep't of the Interior , 876 F.3d 1144, 1172 & n.36 (9th Cir. 2017) (holding "that the second sentence of § 702 waives sovereign immunity broadly for all causes of action that meet its terms" and, after collecting cases, noting that "[t]he Fifth Circuit appears to be alone in holding to the contrary"). And to the extent it holds that immunity is available for APA-only claims only when the plaintiff alleges a "legal wrong," see Alabama-Coushatta , 757 F.3d at 489, it seems to disallow what the Supreme Court allowed *526 under the facts of Lujan , see, e.g., Lujan , 497 U.S. at 883, 110 S.Ct. 3177 (noting the claim at issue was brought "only under the general review provisions of the APA" and recognizing "Respondent does not assert that it has suffered 'legal wrong,' so we need only discuss the meaning of 'adversely affected or aggrieved ... within the meaning of a relevant statute' ").
In other words, Lujan involved an APA-only claim but was expressly reviewed under the "adversely affected" clause of § 702. Alabama-Coushatta holds such a claim would not overcome immunity because an APA-only claim must allege a "legal wrong." Alabama-Coushatta , 757 F.3d at 489 (noting § 702 "waives immunity for claims where a 'person suffer[s] legal wrong because of agency action' " and reasoning "[t]his type of waiver applies when judicial review is sought pursuant only to the general provisions of the APA").
The Court is bound by the holding in Alabama-Coushatta rather than the facts of Lujan . BNSF must therefore allege a "legal wrong" to invoke § 702's waiver of sovereign immunity.
2. Zone-of-Interests Test
This raises a second question: is BNSF's claim subject to the zone-of-interests test? Many Supreme Court cases discussing this test suggest it derives from the "adversely affected or aggrieved" clause, not the "legal wrong" clause, of § 702. In Lujan , the Supreme Court emphasized that "to be 'adversely affected or aggrieved ... within the meaning' of a statute, the plaintiff must establish that the injury he complains of ... falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." Id. (emphasis added). That discussion built on an earlier explanation that Association of Data Processing Service Organizations, Inc. v. Camp -the seminal zone-of-interests case-supplied a "gloss by adding to the requirement that the complainant be 'adversely affected or aggrieved ,' ... the additional requirement that 'the interest sought to be protected by the complainant [be] arguably within the zone of interests.' " Clarke v. Sec. Indus. Ass'n , 479 U.S. 388, 395-96, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987) (emphasis added) (citations omitted).
So, while § 702 speaks of both legal wrongs and individuals adversely affected or aggrieved, it would appear the Supreme Court has "consistently interpreted this latter clause to permit review only in cases brought by a person whose putative injuries are 'within the "zone of interests." ' " INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor , 510 U.S. 1301, 1305, 114 S.Ct. 422, 126 L.Ed.2d 410 (1993) (O'Connor, J., granting stay pending appeal) (emphasis added); see also Thompson v. N. Am. Stainless, LP , 562 U.S. 170, 177, 131 S.Ct. 863, 178 L.Ed.2d 694 (2011) ("The [APA] authorizes suit to challenge a federal agency by any 'person ... adversely affected or aggrieved ... within the meaning of a relevant statute.' ... We have held that this language establishes a regime under which a plaintiff may not sue unless he 'falls within the "zone of interests." ' " (emphasis added)).
If the interpretation expressed in the above cases governed, BNSF's claim would not be subject to the zone-of-interests test because, under Alabama-Coushatta , BNSF's APA-only claim must allege a "legal wrong"-not that BNSF was "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 757 F.3d at 489 (citing Lujan , 497 U.S. at 882, 110 S.Ct. 3177 ).
*527 But the Supreme Court has also stated without qualification that it "interpret[s] § 10(a) of the APA to impose a prudential standing requirement" and "[f]or a plaintiff to have prudential standing under the APA, 'the interest sought to be protected by the complainant [must be] arguably within the zone of interests to be protected or regulated by the statute ... in question.' " Nat'l Credit Union Admin. v. First Nat'l Bank & Tr. Co. , 522 U.S. 479, 488, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998) ; see also Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak , 567 U.S. 209, 224, 132 S.Ct. 2199, 183 L.Ed.2d 211 (2012) ("This Court has long held that a person suing under the APA must satisfy ... an additional test: The interest he asserts must be 'arguably within the zone of interests to be protected or regulated by the statute' that he says was violated." (citation omitted)).
The Fifth Circuit follows this generalized view of the zone-of-interests test.[12] See, e.g., Markle Interests, L.L.C. v. U.S. Fish & Wildlife Serv. , 827 F.3d 452, 462 (5th Cir. 2016), cert. granted sub nom. Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv. , --- U.S. ----, 138 S. Ct. 924, 200 L.Ed.2d 202 (2018) ("In particular, to establish standing under the APA ... a plaintiff must show that 'the interest sought to be protected by the [plaintiff] is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' ").[13]
Absent clarification from the Supreme Court or the Fifth Circuit on whether the zone-of-interests test is a gloss on only the "adversely affected" clause of § 702 or a judicially crafted prudential limit on all APA claims, the Court therefore finds it is bound to follow the latter interpretation, which the greater weight of binding authority embraces.
3. Application
In arguing BNSF fails to plead a legal wrong, the EEOC recycles its argument against finality-i.e., that "[n]othing the EEOC has done up to this point has determined BNSF's rights or obligations in any way." Mot. Dismiss 12, ECF No. 10. BNSF responds that the EEOC's release of the letters to members of the public violated BNSF's "right of confidentiality about the existence of a charge"-a charge BNSF claims was illegal from the outset. Pl.'s Resp. 15, ECF No.12.
The EEOC's argument is no more persuasive here than it is for the issue of finality. "Whether a plaintiff's interest is 'arguably ... protected ... by the statute' within the meaning of the zone-of-interests test is to be determined not by reference *528 to the overall purpose of the Act in question ... but by reference to the particular provision of law upon which the plaintiff relies." Bennett , 520 U.S. at 175-76, 117 S.Ct. 1154. "Under the generous review provisions of the APA, that test is not meant to be especially demanding." Texas , 787 F.3d at 754 (cleaned up).
Here, BNSF easily meets its burden. It identifies two statutory provisions, both of which provide employers important procedural protections and both of which BNSF alleges the EEOC violated. See Pl.'s Resp. 14-15, ECF No. 12. First, BNSF alleges "the ADA imposes clear statutory duties on EEOC with respect to who may make a charge, the required content of a charge, and the confidentiality with which a charge must be treated." Id. Specifically, the applicable provision provides, "[c]harges shall be in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b). BNSF alleges the EEOC violated the verification requirement and that the violation eventually led to the right-to-sue letters. The verification "requirement has the ... object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury." Edelman v. Lynchburg Coll. , 535 U.S. 106, 113, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002) (emphasis added). As the Supreme Court has construed this provision as "protecting employers," BNSF falls cleanly within the provision's zone of interests.
Secondly, BNSF alleges the EEOC violated its "right of confidentiality about the existence of a charge." Pl.'s Resp. 15, ECF No. 12. Title VII provides, "[c]harges shall not be made public by the Commission." 42 U.S.C. § 2000e-5(b). As the Supreme Court has noted, "the purpose of [this] disclosure provision[ ] was to prevent wide or unauthorized dissemination of unproved charges." EEOC v. Associated Dry Goods Corp. , 449 U.S. 590, 599, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981). This confidentiality requirement-precluding publication of unproved charges-most directly protects those who would be charged: employers. And "[i]nformation expressly declared by statute to be confidential is so privileged." EEOC v. Philip Servs. Corp. , 635 F.3d 164, 166 (5th Cir. 2011) (quoting Branch v. Phillips Petroleum Co. , 638 F.2d 873, 879 (5th Cir. 1981) ). BNSF therefore falls within the zone of interests contemplated by Title VII's confidentiality requirements.
The Court finds that BNSF sufficiently alleged a legal wrong and that it is within the applicable provisions' zones of interests to satisfy § 702.
C. Adequate Alternatives
Finally, the EEOC argues BNSF is not entitled to APA review because it has an adequate alternative remedy. The EEOC characterizes BNSF's requested relief as "a request that any suit based on the letters be terminated by this Court." Def.'s Reply Mot. Dismiss 9, ECF No. 13. This relief is something BNSF "could seek ... in any lawsuit that is actually filed." Id. BNSF counters that the "EEOC cites no authority, and BNSF is aware of none, holding that EEOC's violation of its confidentiality obligations would be a defense available to BNSF in such a lawsuit." Pl.'s Resp. 21, ECF No. 12. And even if it could raise such a defense in individual law suits, BNSF continues, "the unique nature of the statutory process here means that the EEOC will not be a party to any litigation filed as a result of EEOC's issuance of the challenged right-to-sue notices," so that "even if BNSF prevails in the litigation, EEOC would not be bound by the ruling and therefore would remain free to repeat *529 its 'shenanigans' until ordered by a court to stop." Id.
Even assuming the EEOC is correct that BNSF could raise its claims about the EEOC's violation of various statutory obligations in individual lawsuits, the Court finds this would be an inadequate alternative remedy to APA review. The EEOC's proposed whack-a-mole approach to vindicating BNSF's rights fails to get to the heart of the matter: the EEOC's actions. See Hinojosa v. Horn , 896 F.3d 305, 310 (5th Cir. 2018) (per curiam) ("At a minimum, the alternative remedy must provide the petitioner 'specific procedures' by which the agency action can receive judicial review or some equivalent.").
Section 704's requirement that review be available only where a plaintiff has no adequate alternative remedy ensures that the APA does not "duplicate existing procedures for review of agency action." Bowen v. Massachusetts , 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Far from duplicating existing procedures, allowing BNSF to initiate APA review here would allow the company a single venue and single proceeding-and would offer the EEOC the same efficiency and convenience-to address what it sufficiently alleges is illegal agency activity. Allowing review in these circumstances makes eminent sense because, while today BNSF alleges the illegal issuance of only 54 letters, the EEOC's proposed theory would mean it could send an employer chasing after hundreds or even thousands of potentially illegal right-to-sue letters. Such a process for challenging agency action would be "arduous, expensive, and long." Hawkes , 136 S. Ct. at 1815.
The Court finds no other adequate remedy in a court precludes APA review.
IV. CONCLUSION
For the reasons stated above, and after carefully considering the motions, briefing, and applicable law, the Court DENIES the EEOC's Motion to Dismiss. See ECF No. 10.
SO ORDERED on this 27th day of November, 2018.

Compl., ECF No. 1.

Def. Mot. Dismiss, ECF No. 10.

See id. at 1 ("[F]or several reasons, BNSF's allegations fail to establish any basis for the exercise of subject-matter jurisdiction, and this case should therefore be dismissed in its entirety.").

The Americans with Disabilities Act (ADA) is one non-discrimination statute operationalized by way of Title VII's enforcement procedures. 42 U.S.C. § 12117(a).

Because the Court finds BNSF sufficiently pleaded a claim under the Administrative Procedure Act, 5 U.S.C. § 702, there is no need to address whether jurisdiction exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 ; 28 U.S.C. § 1346 ; or 28 U.S.C. § 1361. As a jurisdictional matter, and to the extent the EEOC challenges BNSF's reliance on them under Rule 12(b)(1), the applicability of those provisions is moot in light of the findings in this Order. But to the extent the EEOC challenges BNSF's ability to obtain relief under either the Declaratory Judgment Act or 28 U.S.C. § 1361, the Court defers ruling on that issue until trial. See Fed. R. Civ. P. 12(i).

BNSF later states that it "asserts a single claim for 'nonstatutory' judicial review of agency action under the APA." Pl.'s Resp. 5, ECF No. 12. That does not appear to be the case. A "nonstatutory" claim is a claim predicated on neither the APA nor any other statute. See Chamber of Commerce v. Reich , 74 F.3d 1322, 1327 (D.C. Cir. 1996) (noting in a case where an APA claim was not pleaded that if "plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision, he may still be able to institute a non-statutory review action"); Puerto Rico v. United States , 490 F.3d 50, 59 (1st Cir. 2007) ("The basic premise behind nonstatutory review is that, even after the passage of the APA, some residuum of power remains with the district court to review agency action that is ultra vires. "). The parties' briefing and the thrust of BNSF's Complaint focus on the Court's ability to entertain a claim under the APA. BNSF's arguments do sound at times like a nonstatutory claim that the EEOC acted ultra vires. But BNSF pleaded an APA claim. See Compl. ¶ 1, ECF No. 1 ("The Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1331 because the lawsuit concerns the scope of EEOC's authority under the ADA, and BNSF sues under section 10(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 ....").

See also Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States , 362 F.3d 333, 336 (5th Cir. 2004) ("If there is no 'final agency action,' a federal court lacks subject matter jurisdiction.").

That the EEOC's issuance of right-to-sue letters immediately triggers definite rights and obligations also distinguishes BNSF's claim here from the kind of pre-enforcement claims at issue in the Fourth and D.C Circuit opinions cited by the EEOC. See Georator Corp. , 592 F.2d at 768 ("Courts have long considered the touchstone of finality to be the fixing of obligations or legal relationships ... No such finality exists with respect to the EEOC's determination of reasonable cause. Standing alone, it is lifeless, and can fix no obligation ...." (emphasis added)); AT & T Co. , 270 F.3d at 975-76 (holding AT&T's theory of finality is "too broad insofar as it would reach a case such as this, in which the agency's taking a position on the law does not affect any other party . Although there are ... particular circumstances in which an agency's taking a legal position itself inflicts injury or forces a party to change its behavior, such that taking that position may be deemed final agency action ... this is not such a case" (emphasis added)).

Cf. Pereira v. Sessions , --- U.S. ----, 138 S. Ct. 2105, 2120-21, 201 L.Ed.2d 433 (2018) (Kennedy, J., concurring) (expressing concern "with the way in which the Court's opinion in [Chevron ] has come to be understood and applied" and noting "it seems necessary and appropriate to reconsider, in an appropriate case, the premises that underlie Chevron and how courts have implemented that decision"); Garco Const., Inc. v. Speer , --- U.S. ----, 138 S. Ct. 1052, 1052, 200 L.Ed.2d 495 (2018) (Thomas, J., dissenting from denial of certiorari) (noting that "Seminole Rock [/Auer ] deference is constitutionally suspect" because it "transfers 'the judge's exercise of interpretive judgment to the agency,' which is 'not properly constituted to exercise the judicial power' " (citation omitted)); Perez v. Mortg. Bankers Ass'n , --- U.S. ----, 135 S. Ct. 1199, 1215, 191 L.Ed.2d 186 (2015) (Thomas, J., concurring in the judgment) ("We have not always been vigilant about protecting the structure of our Constitution. Although this Court has repeatedly invoked the 'separation of powers' and 'the constitutional system of checks and balances' as core principles of our constitutional design, essential to the protection of individual liberty ... it has also endorsed a 'more pragmatic, flexible approach' to that design when it has seemed more convenient to permit the powers to be mixed ...."); Decker v. Nw. Envtl. Def. Ctr. , 568 U.S. 597, 616, 133 S.Ct. 1326, 185 L.Ed.2d 447 (2013) (Roberts, C.J., concurring) ("Questions of Seminole Rock and Auer deference arise as a matter of course on a regular basis. The bar is now aware that there is some interest in reconsidering those cases, and has available to it a concise statement of the arguments on one side of the issue."); Waterkeeper All. v. EPA , 853 F.3d 527, 539 (D.C. Cir. 2017) (Brown, J., concurring) ("An Article III renaissance is emerging against the judicial abdication performed in Chevron 's name. If a court could purport fealty to Chevron while subjugating statutory clarity to agency 'reasonableness,' textualism will be trivialized."); ids="12277099" index="176" url="https://cite.case.law/f3d/853/527/#p539">id. ("Truncating the Chevron two-step into a one-step 'reasonableness' inquiry lets the judiciary leave its statutory escort to blow on an agency's dice. 'It isn't fair. It isn't nice.' " (quoting Frank Sinatra , Luck Be A Lady, on SINATRA '65: The Singer Today (Reprise Records 1965))). See also Jonathan H. Adler, Auer Evasions , 16 Geo. J.L. & Pub. Pol'y 1, 19 (2018) ("Some courts have gotten wise to this form of evasion, looking to the substance of an agency action in order to determine whether it is final and subject to judicial review, rather than looking merely at the label attached to the action by the agency." (citing Texas v. United States , 201 F. Supp. 3d 810 (N.D. Tex. 2016) )).

Indeed, "Abbott Laboratories is often considered the seminal case for describing what is necessary for final agency action" under the APA, yet that case drew upon non -APA cases in articulating the guiding principles for finality and reviewability. William Funk, Final Agency Action After Hawkes , 11 NYU J.L. & Liberty 285, 294 (2017) ; see, e.g., Abbott Labs. , 387 U.S. at 149-50, 87 S.Ct. 1507 ("The cases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way. Thus in Columbia Broadcasting System ... a suit under the Urgent Deficiencies Act, 38 Stat. 219, this Court held reviewable a regulation of the Federal Communications Commission setting forth certain proscribed contractual arrangements between chain broadcasters and local stations.").

See Texas , 201 F. Supp. 3d at 818 ("In evaluating whether a challenged agency action meets these two conditions, this court is guided by the Supreme Court's interpretation of the APA's finality requirement as 'flexible' and 'pragmatic.' " (citing Qureshi , 663 F.3d at 781 )).

But see Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc. , 702 F.3d 794, 802 (5th Cir. 2012) (noting the APA authorizes suit against "a federal agency by any 'person ... adversely affected or aggrieved ... within the meaning of a relevant statute[.]' 5 U.S.C. § 702. The Supreme Court has held that this language establishes a regime under which a plaintiff may not sue unless he 'falls within the "zone of interests" ' " (emphasis added) (citation omitted)); Save Ourselves, Inc. v. U.S. Army Corps of Eng'rs , 958 F.2d 659, 661 (5th Cir. 1992) ("In order to show adverse effect or aggrievement , 'the plaintiff must establish that the injury he complains of (his aggrievement, or the adverse effect upon him ) falls within the "zone of interests." ' " (first emphasis added)).

See also Texas v. United States , 787 F.3d 733, 754 (5th Cir. 2015) ("In addition to having standing, the states must seek to protect interests that are 'arguably within the zone of interests to be protected or regulated by the statute ... in question.' "); Giddings v. Chandler , 979 F.2d 1104, 1110 (5th Cir. 1992) ("But, standing under the APA is determined by applying the same 'zone of interest' test as applied to determine standing in the mandamus context.").